**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

| | |
|---|---|
| LANDUS COOPERATIVE,<br><br>                Plaintiff,<br><br>v.<br><br>NEW COOPERATIVE, INC., JEFFREY RYAN HEADLEY, and BRIAN DAVID BERNS,<br><br>                Defendants. | Case No. _____<br><br>**COMPLAINT FOR DAMAGES, TEMPORARY RESTRAINING ORDER, AND TEMPORARY AND PERMANENT INJUNCTIVE RELIEF, AND JURY DEMAND** |

Plaintiff Landus Cooperative ("Landus"), for its Complaint against Defendants Jeffrey Headley ("Headley"), NEW Cooperative, Inc. ("NEW Cooperative"), and Brian Berns ("Berns") (collectively, "Defendants") alleges as follows:

## INTRODUCTION

1.      Landus brings this case to stop the theft and misappropriation of its confidential and proprietary information that constitute trade secrets under Iowa and federal law (the "Confidential Information"), and to protect the client relationships that it has spent years and substantial resources developing.

2.      Defendants Headley and Berns are former Landus employees and, while employed at Landus, they had access to the Confidential Information, including, but not limited to, highly confidential Landus customer, pricing, inventory, and strategy information. Berns' employment with Landus was terminated on December 7, 2020, after which he went to work for

1

Landus' direct competitor, NEW Cooperative. Headley followed Berns to NEW Cooperative shortly thereafter, resigning his Landus employment on December 21, 2020, while already on the payroll of NEW Cooperative.

3.      It has come to the attention of Landus that Headley stole its Confidential Information two days before resigning his employment, by improperly sending more than thirty Landus emails with numerous attachments to his personal email account. Among other things, those emails included sensitive Confidential Information about Landus customers, customer lists, pricing information, inventory information, customer pricing quotes, and confidential Landus documents regarding sales and marketing strategies, goals, and initiatives.

4.      After emailing the Confidential Information to his personal email account, Headley factory wiped his Landus-issued i-Phone and I-Pad in order to prevent Landus from discovering what he had done.

5.      Headley then shared this information with Berns, and Berns and Headley engaged in a comprehensive scheme to delete all evidence of their misconduct.

6.      The evidence of that misconduct includes the following texts between Berns and Headley:



7.      Berns and Headley carried out that scheme to destroy evidence while agents and employees of NEW Cooperative.

8.      Because of this spoliation of evidence, Landus does not know the full extent of the misappropriation, which could include Landus information well beyond that contained in the emails discovered by Landus.

9.      Landus has been and will continue to suffer irreparable harm if Defendants are not enjoined from further spoliation of evidence.

10.      Landus has been harmed and will continue to suffer irreparable harm if Headley and Berns are not promptly enjoined from using, disclosing, and otherwise misappropriating Landus' Confidential Information and from soliciting and selling to customers to whom they were assigned when employed by Landus. Headley and Berns must also be ordered to return all of the Confidential Information and any other Landus property they have stolen.

11.      The evidence indicates that Headley stole the Confidential Information to aid Berns and NEW Cooperative and that the stolen Confidential Information was transferred to

3

Berns. Among the Confidential Information stolen by Headley was Berns' customer list and sensitive information about Berns' Landus customers. As agents of NEW Cooperative, Headley and Berns are improperly using Landus' Confidential Information, and all Defendants must be appropriately enjoined.

## PARTIES

12.    Landus is a farmer-owned agricultural cooperative and leader in agronomy services organized under Chapter 499 of the Code of Iowa.

13.    Landus is headquartered in Ames, Iowa with approximately 7,000 member-owners.

14.    Headley was an employee of Landus until December 21, 2020 when he abruptly quit without notice. At the time of his resignation, Headley was a Field Sales Agronomist. On information and belief, Headley is a resident of Paton, Iowa.

15.    NEW Cooperative, Inc. is a cooperative association organized under Chapter 499 of the Code of Iowa with headquarters in Fort Dodge, Iowa.

16.    Berns was an employee of Landus until December 7, 2020 when his employment was terminated. At the time of his termination, Berns was a Field Sales Agronomist. On information and belief, Berns is a resident of Lohrville, Iowa.

## JURISDICTION AND VENUE

17.    The Court has jurisdiction over the subject matter of this action because Landus' allegations arise under 18 U.S.C. § 1836(b), which provides for a federal right of civil action for theft of trade secrets.

18.    This Court has supplemental jurisdiction over the remaining state claims pursuant to 28 U.S.C. § 1367.

4

19.     This Court has personal jurisdiction over Headley and Berns, because they are residents of Iowa, regularly transact business in Iowa, and were employed in Iowa during the relevant time.

20.     This Court has personal jurisdiction over NEW Cooperative because it is an Iowa cooperative association with headquarters in Fort Dodge, Iowa.

21.     Venue is proper in the Northern District of Iowa, pursuant to 28 U.S.C. § 1391(b)(2), and the Central Division, because a substantial part of the events giving rise to the claims occurred in Webster and Calhoun counties as NEW Cooperative's headquarters is in Fort Dodge and a portion of the Landus customers affected by the events at issue are in those counties.

## FACTS

### Overview of Landus

22.     Landus is a farmer-owned agricultural cooperative with approximately 7,000 member-owners.

23.     Headquartered in Ames, Iowa, Landus serves more than 60 communities in Iowa and Minnesota.

24.     Landus was formed in 2016 through the combination of Farmers Cooperative Company ("Farmers") and West Central Cooperative ("West Central").

25.     Landus is an Iowa leader in agronomics and farm services.  Agronomy is a highly competitive industry in Iowa, and Landus' proprietary approach to agronomic services has provided it a competitive advantage in this field.

5

26.     Landus offers a full range of products and services for its farmer-members, including agronomy services, precision agriculture, field services, soybean seed, grain marketing, and animal nutrition.

27.     The Landus agronomy team works with farmers to understand their individual needs and then provides customized recommendations for each grower's operations, and sales and services to implement those recommendations throughout the year, including seed products, crop protections, crop nutrients, and field services.

**Brian Berns' Employment**

28.     Berns began working for Farmers on August 1, 1994.

29.     Berns became an employee of Landus when Farmers and West Central combined in 2016 to form Landus.

30.     In his employment with Farmers and Landus, Berns worked at their facilities in Churdan and Farnhamville, Iowa, servicing agronomy customers and selling agronomy products.

**Jeffrey Headley's Employment**

31.     Headley began working for West Central in January 2008.

32.     After resigning from West Central on May 23, 2014, Headley went to work for Farmers.

33.     Headley became an employee of Landus in 2016 when Farmers and West Central combined to form Landus.

34.     In his employment with West Central, Farmers, and Landus, Headley worked at their Paton and Somers, Iowa facilities servicing agronomy customers and selling agronomy products.

6

**Agronomy Sales**

35.     Headley and Berns both worked as Field Sales Agronomists for Landus.

36.     Field Sales Agronomists are assigned a specific geographical region.

37.     Field Sales Agronomists sell agronomy products and services to farmer customers within their geographic region.

38.     Both Jeffrey Headley and Brian Berns were assigned to the Northwest Iowa Region.

39.     Jeffrey Headley was assigned to customers in the Paton, Somers, and Ogden area, and Brian Berns was assigned to customers in the areas of Somers, Farnhamville, Churdan, and surrounding areas.

40.     In a typical year, the Field Sales Agronomists begin working with their assigned farmer customers in approximately November and into December (and sometimes January) to build a plan for the seeds, crop nutrition (i.e. fertilizer), crop protection (i.e. chemicals, herbicides, insecticides, and fungicides), and field services needed for their operations for the upcoming year.

41.     Customer plans are highly customized to the needs of each farmer's operations and include, for example, the testing of soil samples to determine the specific chemicals and fertilizers needed for particular areas in the field, and the building of recommendations based on the number of bushels desired.

42.     Field Sales Agronomists then sell the recommended products to farmer customers and implement the plans, while providing needed services throughout the year.

43.     Oftentimes, implementing the plan includes the application of the fertilizer and chemicals by the cooperative, which is yet another revenue stream opportunity.

7

44.     Field Sales Agronomists frequently must adjust the recommendations in the plan as needed based on weather issues or other unforeseen circumstances that occur throughout the year, for example, by changing the farmer's seed order from corn to soybeans if a particular amount of precipitation occurs during the Spring months.

45.     Field Sales Agronomists work with their farmer customers throughout the year to deliver and implement the products and services ordered by the customer and address needs that arise.

46.     Immediately after harvest time, Field Sales Agronomists sell fertilizer to farmer customers.

47.     The seasonal year then starts again in November when Field Sales Agronomists begin preparing the recommended plan for the next year of their farmer/customer's operations.

**The Prepay Season is Critical to the Agronomy Sales Year**

48.     Prepay season is vital to all ag retailers.

49.     The agronomy industry is currently in the prepay season.

50.     The prepay season occurs as yearly plans are formulated in approximately November, December, and January each year.

51.     Farmer customers receive a discount if they prepay by a certain date for the plan products and services needed for their operations for the coming year.

52.     The best discount that can be obtained applies for those farmer customers who prepay by the date set by ag retailers, which is typically January 15, and many customers choose to pay before the end of the tax year on December 31 in order to obtain tax advantages.

53.     Although lesser prepay discounts apply after January 15, prepay season continues through January and February as farmers who prepay for products and services for the year still

8

receive a discount. The applicable discount incrementally decreases the further the prepay occurs into the season.

**Landus Takes Reasonable Measures to Protect its Confidential Information**

54. In their roles at Landus, both Headley and Berns were provided access to Landus' Confidential Information, including information regarding Landus' products, customers, pricing strategies, business tactics, and strategy.

55. The Landus Confidential Information to which Headley and Berns had access is very valuable to Landus and would provide an unfair competitive advantage to any Landus competitor that obtained access to it. Due to the highly competitive and individualized nature of the agronomy coop business, information such as customer lists and preferences, pricing information, inventory information, and marketing strategies are incredibly important. Because of the high level of competition, even a small difference in prices, for example, can make a large competitive impact. Moreover, the highly individualized nature of customer plans, and the detailed customer information and needs upon which those plans are built, renders customer information that much more essential to competing in the marketplace.

56. Given its immense value, Landus works diligently to protect the confidentiality of this information.

57. Landus maintains security around its electronic data and computer network. Landus only grants access to its Confidential Information on a need-to-know basis.

58. Landus invests heavily in cybersecurity to protect its confidential customer data and trade secrets with an annual budget of roughly $600,000 for cybersecurity tools alone, an overall annual technology security budget of roughly $1 million, and roughly 2.5 full-time equivalent technology professionals dedicated to data security protection. Landus employs a

9

layered cybersecurity system with multiple levels of data security protection, and access to individual Landus customer information is password protected and allowed only on a need-to-know basis. Access to customer lists is highly restricted.

59. All Landus employees are required to acknowledge and comply with the Confidentiality Policy in its Employee Handbook ("Confidentiality Policy").

60. The Confidentiality Policy requires employees to maintain the confidentiality of company information:

### Confidentiality Agreement

Employees recognize and acknowledge while employed by Landus Cooperative they have access to information, including oral, visual, written, electronic or any other medium or by any other method related to the company and its affiliates and subsidiaries (herein referred to as "Companies") which the Companies consider to be confidential, including but not limited to: customer lists, pricing lists and methods, marketing strategies, suppliers, product information (e.g., processes, formulas and ingredients), computer programs and database information, etc. Another valuable asset is its intellectual property (e.g., patents, trade secrets, trademarks, copyrights and other proprietary information, etc.). All employees must take steps to protect these assets.

The information is not generally known to competitors of the Companies nor intended for general use or distribution. An employee will at no time, except when authorized by the Companies, disclose to others or use for their benefit such confidential information or intellectual property. Employees are expected to keep this information confidential during and after employment. All employees will sign a Confidentiality Agreement with the Company by which the employees agree not to disclose confidential information of the Companies. If an employee is unsure about the confidential handling of specific information, they should ask their supervisor or contact the Human Resources department for clarification. Employees who violate state or federal confidentiality statutes in the course of their work may be personally liable for their actions. Failure to maintain confidential information will be grounds for disciplinary action up to and including termination.

10

61.     The Confidentiality Policy expressly provides that Landus considers to be confidential, among other things, "customer lists, pricing lists and methods, marketing strategies, suppliers, product information (e.g., processes, formulas and ingredients), computer programs and database information, etc."

62.     The Confidentiality Policy recognizes that this information is "not generally known to competitors of the Companies nor intended for general use or distribution."

63.     Employees are required to keep the information confidential "during and after employment."

64.     Landus employees review the Employee Handbook online and indicate their assent to agree to the policies therein by clicking an "acknowledgment" box after they read the Handbook.

65.     Most recently, Headley reviewed and acknowledged the Employee Handbook on May 1, 2020.

66.     Most recently, Berns reviewed and acknowledged the Employee Handbook on April 2, 2020.

67.     Berns and Headley are well-aware of their confidentiality obligations as they have been subject to confidentiality policies in their employment with West Central, Farmers, and Landus.

68.     Given the importance of this information and the highly competitive nature of agronomy sales, such confidentiality obligations are standard in the industry.

69.     For example, Headley signed a Confidentiality Agreement with West Central in 2012.

70.     The Confidentiality Agreement Headley signed in 2012 while employed by West Central provides:

> Confidential Information. Employee recognizes and acknowledges that he will have access to confidential and/or commercially valuable proprietary technical and non-technical information· (including agronomy customer data, sales histories, field information, and satellite generated information) which is vital to the success of West Central and Westco's business and relationships with its customers, and that West Central or Westco utilizes in formulating, promoting, and selling its products and services which is entitled to protection from disclosure. Employee shall hold in strict confidence, both during the term of his employment by West Central and relationship with Westco and at any time thereafter, and shall not disclose to any third party, except as required in the course of his employment with West Central or relationship with Westco, any information of a confidential and proprietary nature not generally available to the public which becomes known to Employee in his course of employment with West Central or relationship with Westco relating to the business operations of West Central or Westco or its customers. If Employee fails to keep and perform every covenant of this paragraph, West Central shall be entitled to enforce the same by injunction in equity, in addition to any other remedies West Central may have.

71.     Landus' Information Technology Policy also protects the integrity of its information.

72.     That policy expressly provides that "All electronic, cellular and telephone communication systems, such as computers, tablets, cell phones, smart phones, fax machines, e-mail, the internet, printers, local area networks, copy machines, and all communications and information transmitted by, received from, or stored in these systems are the property of the Company."

73.     The policy requires employees to safeguard company information.

74.     Employees are expressly prohibited from transferring Landus information outside the company, including to personal devices or accounts, and in an email to all employees as recently as October 26, 2020 were again reminded that " . . . all Landus emails and internal

12

communications are intended for company use only, and should **never be disseminated outside of the company**."

**The Events of December 2020**

a.      *Termination of Berns' Employment on December 7, 2020*

75.      On December 7, 2020, Landus terminated Berns' employment, because of disparaging comments he made about the company.

76.      Since termination, Landus has discovered numerous other disparaging comments about the company made by Berns in text messages found on his company-issued phone.

77.      For example, among those many disparaging remarks, Berns referred to others at Landus as "idiots," "clowns," and "f*ckers."

78.      In a text to Headley on November 20, 2020, Berns stated that if Landus fired him, "get ready for a bomb of pissed farmers."

79.      In a text conversation between Headley and Berns on November 25, 2020 discussing their dissatisfaction regarding alleged "promised" changes that would be made to the compensation structure, Berns told Headley about a conversation with his manager: "I told him the meter is running.  I have to be selling to get the work done but if your promises fall short I will tear it all back down."

80.      In addition, on December 7, 2020, the same date his employment was terminated, Berns told Headley that, "Now would be the time to stand with me if this goes south and it looks like it could."  Headley replied, "I'm with you."

81.      On or about December 12, 2020 Landus learned that Berns was working for NEW Cooperative as an "agronomy sales specialist" in the exact same geographical territory that he used to cover for Landus.  *See* https://www.newcoop.com/agronomy-staff/.

13

*b.*   *Headley Resigns his Employment at 8:15 a.m. on December 21, 2020*

82.   On the afternoon of Sunday, December 20, 2020, Headley contacted his manager and asked to speak to him the next day at 8:15 a.m.

83.   At 8:15 a.m. on Monday, December 21, 2020, Headley abruptly resigned his employment.

84.   At the time he resigned, he told his manager that he was already working for NEW Cooperative.

85.   At the time he resigned, Headley returned his company-issued phone and I-Pad, but he had wiped the devices before doing so.

*c.*   *Landus Discovers that Headley Stole Confidential Information Two Days Before His Resignation*

86.   After Headley's resignation on December 21, 2020, Landus discovered that on December 19, 2020, two days before his resignation, Headley had sent at least 36 emails (many with multiple attachments) to his personal email address.

87.   Among the many documents taken were Berns' customer list and highly confidential and sensitive information about Berns' Landus customers, customer lists for the entire region, pricing information, inventory information, customer quotes, and highly confidential documents regarding company marketing and sales strategy and initiatives.

88.   It is now apparent that Headley's factory wipe of his Landus-issued i-Phone and I-Pad were designed to prevent Landus from discovering what he had done with his Landus-owned devices and to hide his theft of the Confidential Information.

14

*d.*    ***The Information Stolen by Headley Constitutes Highly Confidential Trade Secrets***

89.    Landus is still in the process of reviewing the data and determining precisely what was taken, but at this time, it is apparent that Headley emailed at least the following information and documents to his personal email account:

<u>Spreadsheet with Berns' Customer List and Customer Information</u>

90.    The attachments that Headley improperly forwarded to his personal email account include five versions of a spreadsheet created by Berns' manager after his termination on December 7, 2020, to compile strategic information about each of Berns' Landus customers (the "<u>Berns Customer Spreadsheet</u>").

91.    The Berns Customer Spreadsheet includes columns listing customer names, addresses, home phone numbers, cell phone numbers, identification of the current account manager assigned by Landus to the customer, hidden columns of cells that contained the past year grain and agronomy sales, and a Comments column with strategic information regarding the specific customers.

92.    The Comments column was compiled based on outreach to Berns' Landus customers after his departure from Landus on December 7, 2020, and specifically includes Landus commentary about that specific customer relationships and prospects and strategy for retaining the relationships.

93.    If that commentary was relayed to customers, it could irreparably injure Landus' relationship with them.

94.    The Berns Customer Spreadsheet was obviously intended for internal use only and was certainly something for which Landus had a legitimate right to expect confidentiality.

<u>Spreadsheet with Customer Lists and Customer Information for Entire Region</u>

95.     Headley also took multiple spreadsheets with information about all current and prospective customers in the region, including names, addresses, account managers, 2020 corn receipts, 2020 bean receipts, and the dollar amount of sales and services to each customer in 2020.

<u>Pricing Lists</u>

96.     Headley emailed to himself pricing information and a complete list of Landus' 2021 pricing, which included, but was not limited to, detailed pricing information for Spring 2021 Fertilizer Pricing, 2020/2021 Service Charges, and Spring 2021 Chemical Prices.

97.     Those lists are clearly labeled as "**CONFIDENTIAL—NOT FOR EXTERNAL DISTRIBUTION**."

98.     The pricing lists had been emailed to Headley, along with other sales associates, only the week before, on December 11, 2020, as Landus prepared for this critical stage of the prepay pricing season.

<u>Inventory</u>

99.     Headley also sent to his personal email account inventory lists and information regarding inventory from the prior year held by Landus.

100.    A competitor like NEW Cooperative (and its employees) could utilize inventory information against Landus to glean Landus' marketing strategy, which is dependent in part on which products Landus has "on hand" and would therefore like to sell before purchasing new inventory.

<u>Landus Marketing and Sales Strategies and Initiatives</u>

101.    Headley sent numerous emails to his personal account with information about Landus marketing and sales strategies and initiatives.

102.    This includes, for example, an email about "Living the Landus Way," which describes the company's five pillars going forward to grow its business.

103.    Another email forwarded discusses the recently-launched "Show to Grow" program, which concerns customer retention strategy.

<u>Customer Quotes</u>

104.    Headley sent at least eight emails to his personal account with customer quotes and orders attached that included detailed information about products and pricing.

105.    With this information at his fingertips, Headley can easily compare Landus' customer quotes, and convince the customer to switch over to NEW Cooperative for a slightly reduced price, effectively "stealing" the customer

d.    *Other Confidential Information Retained by Headley and Berns*

106.    In addition to the information Headley emailed to his personal account, both Headley and Berns had physical notebooks in which they compiled information about customers while they were employees of Landus.

107.    Headley and Berns used these notebooks to record customer information, sales, and needs while in the field until the information could be later inputted into Landus' system.

**The Confidential Information Stolen by Headley Derives Economic Value From Not Being Readily Ascertainable by Proper Means**

109.    The information taken by Headley, and shared with Berns and New Cooperative, to compete with Landus is invaluable to Landus, its reputation, and its ability to compete in the marketplace.

17

110.    The Confidential Information taken gives Berns, Headley, and NEW Cooperative a tremendous advantage in competing with Landus.

111.    Once customers have taken their business to NEW Cooperative, the impact to the customer relationship with Landus is irreparable.

112.    Moreover, damage to Landus' reputation with its customers will be irreparable and cannot be compensated with money damages.

113.    Disclosure of Landus' marketing and sales strategy and initiatives to NEW Cooperative is also irreparable.  Once that information is in NEW Cooperative's possession, Landus will be irreparably damaged in its impaired ability to compete with NEW Cooperative.

*a.    Customer Information*

114.    The detailed customer information taken by Headley (including, for example, customer cell phone numbers, data regarding customers' 2020 yields and sales, and sensitive commentary regarding customers) is highly confidential and invaluable to Landus.

115.    The customer spreadsheets taken were internal documents and included telephone numbers, addresses, amount of agronomy sales, grain marketing sales, feed sales, and any other information that Landus had on file about each customer.

116.    That detailed customer information allows Landus to anticipate and more readily address its customers' ongoing needs and concerns, thereby giving it a distinct advantage in competing for their business.

117.    The information was compiled through Landus' years of experience with its customers and cannot be readily recreated by anyone through the use of publicly-available information.

18

118.    In addition to its value in securing future sales, the sensitive customer commentary in the Berns Customer Spreadsheet could irreparably harm Landus' reputation, including its relationship with those customers.

119.    Customers expect that their information will be kept confidential and not provided to anyone outside Landus.  Therefore, the theft and use of that information by Headley and Berns in their current roles at NEW Cooperative irreparably harms Landus' reputation with its customers.

**b.    Pricing and Inventory Information**

120.    Due to the highly competitive nature of the industry, pricing information is extremely valuable.

121.    Being handed a complete copy of Landus' complete pricing list gives a competitor like NEW Cooperative a tremendous advantage, because it can then instantaneously outprice Landus on every single product.

122.    Farmers are smart with their hard-earned money, and they have to be in today's tough agricultural market.  Saving even a relatively small amount of money on their crop inputs can sway any farmer to switch suppliers.

123.    Competitive pricing is critical to success in the agronomy industry.

124.    The purpose of the pricing lists that were taken is to provide an opportunity for Landus employees to be successful.

125.    Landus is generally the first out of the gate each year with prices and the competition reacts and either tries to beat Landus or match its price.

126.    With Landus' entire price sheets in the hands of its biggest competitor, Landus is at a severe disadvantage.

19

127. Instead of being the leader on prices, Landus is now in the position of playing defense and is finding itself out of the market on product pricing it formerly commanded and led.

128. Pricing lists are heavily protected and would never be provided to anyone outside the company, even a customer.

129. Rather, customers are only provided pricing information necessary for their particular quotes.

130. Pricing data is not advertised but rather promotional literature directs customers to contact their local field agronomists for pricing information and details.

131. Berns and Headley were acutely aware that pricing information is vital to competition.

*c.* ***Marketing and Sales Strategies and Initiatives***

132. The Landus marketing and sales strategy and initiatives documents stolen by Headley were created solely for the use of Landus.

133. By taking Landus' marketing and sales strategy and initiatives information (including its new initiatives for competing in the marketplace in 2021), Headley can simply hand over to his new employer, NEW Cooperative, what is essentially a roadmap for NEW Cooperative to compete against Landus in 2021.

134. Landus' contracts within the industry, growth opportunities, and marketing strategies to meet customer expectations are unique to Landus and owned by Landus alone.

**Spoliation of Evidence by Headley, Berns, and NEW Cooperative**

135. After discovering the Landus Confidential Information had been stolen, counsel for Landus worked with counsel for Defendants to quarantine the information stolen and was repeatedly assured by Defendants that the stolen information had not been used or even opened.

136.    However, after more than two weeks of those discussions, Landus discovered late last week that the Defendants have been destroying evidence since the inception of their wrongdoing and continuing through as late as December 30, 2020, six days after Landus provided notification to Defendants of the imminent lawsuit and their duty to preserve evidence.

*a.  Landus' December 24, 2020 Letter to Defendants*

137.    On December 24, 2020, the undersigned counsel for Landus sent letters to Headley, Berns, and NEW Cooperative notifying them that Landus had discovered the trade secrets theft and demanding that all evidence be preserved, stating in relevant part:

> [T]he Company demands that use of its confidential information and trade secrets (including all usage of that information to improperly solicit the Company's customers) **immediately** stop, all confidential information and trade secrets taken from the Company be returned . . . .
>
> You are also hereby on notice that NEW Cooperative must **retain and preserve** all documents, electronic records, information, electronic storage devices, and tangible things that may be relevant should claims be made against you.  This includes, but is not limited to, all texts, emails, and other communications between and among NEW Cooperative, Mr. Berns, and Mr. Headley.

*b.  Subsequent Discussions and Assurances By Defendants that Confidential Information Was Contained and Had Not Been Used or Even Opened*

138.    The week following Landus' December 24, 2021 letter, Stu Cochrane, counsel for NEW Cooperative, Headley, and Berns reached out to the undersigned counsel and communicated with attorney Angela Gray concerning quarantine of the stolen information and examination of the relevant devices.

139.    In reliance on those discussions, Landus held off filing its suit and motion for TRO and preliminary injunction.

140.     The undersigned counsel followed-up those conversations with a letter dated December 31, 2020, which demanded that Defendants make all available devices available for forensic examination.

141.     Mr. Cochrane responded on Friday, January 1, 2021, and assured Landus that the stolen information had been contained and that Headley had not forwarded or even opened the emails with Landus information that he had sent to his personal email account on December 19, 2020.

142.     Mr. Cochrane stated:

> I want to begin by providing an update on the action taken by new co-op to contain the information at issue. Headley has COVID. It has complicated taking physical possession of his devices. Nonetheless, on Wednesday afternoon I participated in a zoom conference with new co-op human resources and new co-op's IT director. Through a shared screen of Mr. Headley's computer we were able to conduct a forensic examination of Headley's computer. On December 19, 2020 Headley forwarded 32 emails from his Landus computer to his home computer. We were able to conclusively determine that that was the extent of any and all information belonging to Landus that Headley forwarded to his home computer. We were able to conclusively determine that those emails have been completely contained. They have not been forwarded or even opened. They remain stored exclusively on his home computer and exclusively on his cell phone.

143.     Thus, Mr. Cochrane and NEW Cooperative's IT director participated in a Zoom call with Headley on Wednesday, December 30, 2020 to "forensically exam" Headley's personal computer.  In reliance on those misrepresentations, Landus held off filing its suit and motion for TRO and preliminary injunction.

144.     Mr. Cochrane also stated that, because they had "conclusively determined" that "the Landus proprietary information has been completely contained on devices owned solely by Headley with access solely by Headley and that no information has ever been forwarded, or

those emails even opened, we are not offering to quarantine or take possession of new co-op devices for independent forensic examination."

145.     Thus, Berns and Headley continue to have free reign to store and use Landus information on their NEW Cooperative-issued phones and other devices.

146.     In the January 1, 2021 email, Mr. Cochrane also indicated:

> I have obtained every text communication between Headley and Berns for the month of December. The text messages, while admittedly containing unfavorable remarks towards your client, contain no proprietary information exchange. In a few of the text messages Berns requests contact information for individuals. We have determined that those individuals are Landus employees. Berns was not requesting nor did he receive contact information for Landus customers/farmers. The text messaging is not pertinent to the issue of proprietary information.

c.  ***Discovery of Defendants' Use of Confidential Information and Spoliation of Evidence***

147.     After Defendants' January 1, 2021 response, counsel for the parties continued to discuss examination of the relevant electronic devices, and Mr. Cochrane mailed Headley's personal computer to Landus' expert in Texas, Flashback Data ("Flashback"), for forensic examination.

148.     Flashback received the computer on January 12, 2021.

149.     When examining that device, on January 14, 2021, Flashback discovered that thousands of emails and other files had been deleted from Headley's personal computer between December 28, 2020 and December 30, 2020, while he was a NEW Cooperative employee and after both he and NEW Cooperative received the evidence retention letter.

150.     After that discovery, Flashback attempted to recover the deleted emails and other files from Headley's personal computer.

151.     Despite those efforts, as of this date Flashback has only been able to recover one relevant email from the December 2020 timeframe.

152.     Flashback was not able to recover any of the emails Headley had forwarded from his Landus account to his personal email account on December 19, 2020. Because Flashback was not able to recover the December 19, 2020 emails, Flashback cannot conduct an examination to determine what was done with them before they were deleted, including whether they were opened, forwarded, or saved on an external device.

153.     As Mr. Cochrane indicated in his January 1, 2021 email he had seen those emails on Mr. Headley's personal computer during their Zoom call on December 30, 2020, and he had confirmed at that time that the emails were marked "unread," Headley must have deleted those emails after the Zoom call with his attorney on December 30, 2020.

154.     In addition to the many emails deleted after that Zoom call on December 30, 2020, the evidence indicates that many more emails were deleted between December 28 and December 30, 2020 before that Zoom call.

155.     As such, Headley and Berns likely stole additional information that has not yet been discovered because they successfully destroyed the evidence.

156.     The one relevant email Flashback was able to recover from Headley's personal computer is determinative.

157.     In that December 29, 2020 email, Headley sends to his wife's email account six pages of scanned texts between him and Berns.

158.     Among the attached texts is a series of communications between Berns and Headley on December 19, 2020 (the same date that Headley emailed confidential Landus

24

information to his personal email account) in which Headley asks Berns when he wants to "borrow" Headley's computer to "get his info."



12/19/20, 8:27 AM

I've got to go to Des Moines tonight, do you want to borrow my computer to get your info?

Yea that probably work.

Thus, Berns "borrowed" Headley's computer on December 19, 2020 to take the Landus information on that device.

159.    Berns was already an employee and agent of NEW Cooperative on December 19, 2020.

160.    In those texts, Berns directs Headley to "[g]et rid of anything you can," to which Headley agrees.



12/19/20, 2:09 PM

This is my new number, if they don't let me keep my old one

Are you deleting all your messages you have sent? They may be able to check

I will

Get rid of anything you can.

I may not get emails addresses from you. I don't want to get someone in trouble. Kindy would probably give me one if needed. They can check a lot of stuff behind the scenes.

161.    When Berns directed Headley to delete evidence on December 19, 2020, he was an employee and agent of NEW Cooperative.

162.    And, indeed it is now clear that Headley and Berns did thereafter "[g]et rid of everything they could," including the December 19, 2020 emails.

163. Because Headley deleted those emails, there is now no way for Landus' expert to examine what was done with them, including whether they were opened, forwarded, or saved on an external device.

164. However, the evidence indicates that the Confidential Information was likely at least transferred onto an external flash drive.

165. Flashback's forensic examination of Headley's personal computer indicates a thumb drive was connected to that device on numerous occasions between December 27, 2020 and December 29, 2020.

166. It thus appears that Berns and/or Headley transferred the stolen information onto external flash drives before the information was deleted from Headley's computer.

167. Although Landus has not been given access to Headley and Berns' texts, Headley and Berns must also have deleted their incriminating texts, as Mr. Cochrane indicated in his January 1, 2021 email to Landus' counsel that he had reviewed their texts and found no evidence of wrongdoing.

168. Moreover, it is now clear that, although Defendants represented they had "forensically examined" Headley's personal computer on December 30, 2020 and "conclusively determined" that the Confidential Information had not been used or even opened, merely seeing that an email in the Inbox is marked "unread" does not at all mean that the email has not in fact been opened or read. Rather, a message's read/unread status can be easily manipulated by simply clicking a button to change the status of an email from "unread" to "read." Further, merely reviewing the Sent folder will not indicate whether an email has been forwarded or used, because the user could have deleted the forwarded email from the Sent folder or transferred the email or other data onto an external storage device.

26

169.     Flashback is also in the process of reviewing the Landus-issued laptop that Headley had in his possession until he resigned on December 21, 2020, and has determined that numerous files were deleted from the computer on December 21, 2020.  Flashback cannot determine whether other deletions may have been made.  Flashback's review indicates that a thumb drive was connected to Headley's Landus-issued laptop on December 19, 2020 between 5:55 p.m. and 5:59 p.m. and another external device was connected on December 21, 2020.

170.     Although this evidence is continuing to be developed, it appears that Defendants likely took more Confidential Information than just the January 19, 2020 emails, and transferred that data from Headley's Landus-issued laptop to an external flash drive, including when Berns "borrowed" Headley's computer on December 19, 2020.

171.     Landus cannot recover anything from the Landus issued i-Phone and i-Pad that Headley wiped before he turned in those devices at his resignation on December 21, 2020, unless those devices were backed-up on iCloud or another storage source.

172.     Landus has not been able to review the information on Headley's and Bern's current devices, including the phones and other devices they use for their employment with NEW Coop.  As such, Defendants are likely continuing to use Landus' Confidential Information and delete key evidence of that misconduct.

173.     Flashback's forensic review of Headley's personal computer and Landus-issued laptop is continuing.

**Harm to Landus**

174.     Since the departure of Headley and Berns, Landus has been losing customers stolen by Defendants.

175.    Landus customers that were previously assigned to Headley and Berns have requested refunds of the prepay funds they already submitted to Landus.

176.    As of December 30, 2020, $253,517 in prepay payments had been returned at the request of customers assigned to Berns while he was at Landus.

177.    Landus has also seen a decline in requests by those customers to meet with new Account Mangers to set up next year's plans for crop inputs.

178.    Landus received eighteen requests as of December 29, 2020 from those customers for their soil sample data to be sent to Brian Berns at NEW Cooperative.

179.    In addition, many of the customers assigned to Berns and Headley while they worked for Landus have told Landus that they are moving their business to NEW Cooperative.

180.    Headley and Berns still possess Landus' Confidential Information. Since Headley is an employee and agent of NEW Cooperative, NEW Cooperative also possesses this stolen Confidential Information and, upon information and belief, NEW Cooperative has used and/or benefited from the stolen Confidential Information.

181.    Landus has and will continue to suffer irreparable harm if Headley, Berns, and NEW Cooperative are not appropriately enjoined.

**The Role of Berns and NEW Cooperative in Headley's Theft of Confidential Information**

182.    The evidence indicates that, while an employee and agent of NEW Cooperative, Berns directed Headley to take Landus' Confidential Information and then received and used the information stolen by Headley, all while knowing the information had been misappropriated.

183.    The evidence also indicates that, while an employee and agent of NEW Cooperative, Berns directed Headley to "get rid of anything" he could, and they both then

proceeded to do so, including after Headley became an employee and agent of NEW Cooperative.

184.    Berns and Headley have both improperly used the stolen Confidential Information as a large portion of the customers assigned to Berns and Headley while employed by Landus have already left Landus and placed their business with NEW Cooperative.

185.    Berns and Headley have used and disclosed Landus' Confidential Information in their capacity as agents and employees of NEW Cooperative in furtherance of sales they have made on behalf of NEW Cooperative.

186.    That misappropriation has given NEW Cooperative an improper advantage in competing against Landus in the marketplace, which has caused and continues to cause great harm to Landus.

187.    In addition, upon information and belief, NEW Cooperative knew, or had reason to know, that the Landus Confidential Information was acquired by Headley and Berns improperly.

## COUNT ONE
### Violation of the Defend Trade Secrets Act, 18 U.S.C. 1836(b), by Headley

188.    Landus incorporates the foregoing paragraphs as if fully stated herein.

189.    Landus' Confidential Information constitutes trade secrets under the Defend Trade Secrets Act.

190.    Headley misappropriated Landus' trade secrets in that he knowingly acquired the trade secrets by improper means.

191.    Headley also misappropriated Landus' trade secrets in that he acquired that Confidential Information under circumstances giving rise to Headley's duty to maintain the secrecy of such information or limit the use of such information.

29

192.     Headley has also misappropriated Landus' trade secrets by using and/or disclosing them without Landus' express or implied consent.

193.     Landus' trade secrets are related to a product or service used in, or intended for use in, interstate or foreign commerce.

194.     Landus has taken reasonable steps to maintain the confidential nature of its trade secrets, including, but not limited to, the Confidential Information that Headley stole.

195.     Landus' trade secrets derive independent economic value from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

196.     Headley possesses Landus' trade secrets without any color of right.

197.     As a direct result of Headley's actions, he has violated the Defend Trade Secrets Act of 2016, 18 U.S.C. 1832, *et. seq.*

198.     Headley's misappropriation of Landus' trade secrets was willful, malicious, and in bad faith, entitling Landus to an award of exemplary damages and attorney fees.

199.     Landus has and will continue to suffer damages as a result of Headley's misappropriation in an amount to be determined at trial.

200.     Landus will also suffer irreparable harm absent immediate injunctive relief, and Landus is entitled to a temporary restraining order, preliminary injunction, and permanent injunction to prevent Headley's misappropriation and threatened further misappropriation.

## **COUNT TWO**
**Violation of the Defend Trade Secrets Act, 18 U.S.C. 1836(b), by Berns**

201.     Landus incorporates the foregoing paragraphs as if fully stated herein.

202.     Landus' Confidential Information constitutes trade secrets under the Defend Trade Secrets Act.

203. Berns assisted Headley with his theft of Landus' trade secrets.

204. Berns misappropriated Landus' trade secrets by using and/or disclosing the Confidential Information stolen by Headley while knowing, or having reason to know, that Headley improperly acquired the trade secrets by stealing them from Landus.

205. Landus' trade secrets are related to a product or service used in, or intended for use in, interstate or foreign commerce.

206. Landus has taken reasonable steps to maintain the confidential nature of its trade secrets, including but not limited to the Confidential Information that Headley stole.

207. Landus' trade secrets derive independent economic value from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

208. As a direct result of Berns' actions, he has violated the Defend Trade Secrets Act of 2016, 18 U.S.C. 1832, *et. seq.*

209. Upon information and belief, Berns' misappropriation of Landus' trade secrets was willful, malicious, and in bad faith, entitling Landus to an award of exemplary damages and attorney fees.

210. Landus has and will continue to suffer damages as a result of Berns' misappropriation in an amount to be determined at trial.

211. Landus will suffer irreparable harm absent immediate injunctive relief, and Landus is entitled to a temporary restraining order, preliminary injunction, and permanent injunction to prevent Berns' misappropriation and threatened further misappropriation.

31

## COUNT THREE
### Misappropriation of Trade Secrets in Violation of
### Iowa Uniform Trade Secrets Act, I.C.A. §§ 550.1-550.8, by Headley

212. Landus incorporates the foregoing paragraphs as if fully stated herein.

213. Landus' Confidential Information constitutes trade secrets under the Iowa Uniform Trade Secrets Act.

214. Through his employment with Landus, Headley had access to and acquired the trade secrets belonging to Landus under circumstances including, but not limited to, those described above, giving rise to a duty to Landus to maintain the secrecy of this information and limit its use for the benefit of only Landus.

215. Headley was subject to a duty of confidentiality.

216. The trade secrets have independent economic value because they are not generally known to or readily ascertainable by proper means by persons outside of Landus.

217. Landus intended to keep its trade secrets confidential and has made reasonable efforts under the circumstances to maintain the secrecy of the information.

218. Headley has misappropriated Landus' trade secrets.

219. Headley's misappropriation of Landus' Trade Secrets was willful and malicious, entitling Landus to recovery of exemplary damages and attorney fees.

220. Landus has and will continue to suffer damages as a result of Headley's misappropriation in an amount to be determined at trial.

221. Landus has and will continue to suffer irreparable harm absent immediate injunctive relief, and Landus is entitled to a temporary restraining order, preliminary injunction, and permanent injunction to prevent Headley' misappropriation and threatened further misappropriation.

32

## COUNT FOUR
## Misappropriation of Trade Secrets in Violation of
## Iowa Uniform Trade Secrets Act, I.C.A. §§ 550.1-550.8, by Berns

222.    Landus incorporates the foregoing paragraphs as if fully stated herein.

223.    Landus' Confidential Information constitutes trade secrets under the Iowa Uniform Trade Secrets Act.

224.    Berns assisted Headley with his theft of Landus' trade secrets.

225.    Berns misappropriated Landus' trade secrets by using and/or disclosing the Confidential Information stolen by Headley while knowing, or having reason to know, that Headley improperly acquired the trade secrets by stealing them from Landus.

226.    The trade secrets have independent economic value because they are not generally known to or readily ascertainable by proper means by persons outside of Landus.

227.    Landus intended to keep its trade secrets confidential and has made reasonable efforts under the circumstances to maintain the secrecy of the information.

228.    Berns has misappropriated Landus' trade secrets.

229.    Berns' misappropriation of Landus' Trade Secrets was willful and malicious, entitling Landus to exemplary damages and attorney fees.

230.    Landus has and will continue to suffer damages as a result of Berns' misappropriation in an amount to be determined at trial.

231.    Landus has and will continue to suffer irreparable harm absent immediate injunctive relief, and Landus is entitled to a temporary restraining order, preliminary injunction, and permanent injunction to prevent Berns' misappropriation and threatened further misappropriation.

**COUNT FIVE**
**Violation of the Defend Trade Secrets Act, 18 U.S.C. 1836(b), by NEW Cooperative**

232.    Landus incorporates the foregoing paragraphs as if fully stated herein.

233.    NEW Cooperative is liable for the trade secret misappropriation by Berns and Headley set forth in Counts One and Two above, because Berns and Headley have stolen, used, and disclosed Landus' trade secrets in their capacity as agents and employees of NEW Cooperative in furtherance of sales they have made on behalf of NEW Cooperative.

234.    That misappropriation has given NEW Cooperative an improper advantage in competing against Landus in the marketplace, which has caused and continues to cause great harm to Landus.

235.    In addition, NEW Cooperative has misappropriated trade secrets in violation of the Defend Trade Secrets Act and Iowa Uniform Trade Sets Act, because, upon information and belief, it knew, or had reason to know, that the Landus Confidential Information was acquired by them improperly.

236.    Upon information and belief, NEW Cooperative' misappropriation of Landus' trade secrets was willful, malicious, and in bad faith, entitling Landus to an award of exemplary damages and attorney fees.

237.    Landus will suffer damages as a result of the misappropriation in an amount to be determined at trial.

238.    Landus will suffer irreparable harm absent immediate injunctive relief, and Landus is entitled to a temporary restraining order, preliminary injunction, and permanent injunction to prevent NEW Cooperative's misappropriation and threatened further misappropriation.

## COUNT SIX
### Misappropriation of Trade Secrets in Violation of
### Iowa Uniform Trade Secrets Act, I.C.A. §§ 550.1-550.8, by NEW Cooperative

239. Landus incorporates the foregoing paragraphs as if fully stated herein.

240. NEW Cooperative is liable for the trade secret misappropriation by Berns and Headley set forth in Counts Three and Four above, because Berns and Headley have stolen, used, and disclosed Landus' trade secrets in their capacity as agents and employees of NEW Cooperative in furtherance of sales they have made on behalf of NEW Cooperative.

241. That misappropriation has given NEW Cooperative an improper advantage in competing against Landus in the marketplace, which has caused and continues to cause great harm to Landus.

242. In addition, NEW Cooperative has misappropriated trade secrets in violation of the Defend Trade Secrets Act and Iowa Uniform Trade Sets Act, because, upon information and belief, it knew, or had reason to know, that the Landus Confidential Information was acquired by them improperly.

243. Upon information and belief, NEW Cooperative's misappropriation of Landus' trade secrets was willful, malicious, and in bad faith, entitling Landus to an award of exemplary damages and attorney fees.

244. Landus will suffer damages as a result of the misappropriation in an amount to be determined at trial.

245. Landus will suffer irreparable harm absent immediate injunctive relief, and Landus is entitled to a temporary restraining order, preliminary injunction, and permanent injunction to prevent NEW Cooperative's misappropriation and threatened further misappropriation.

35

**COUNT SEVEN**
**Breach of Fiduciary Duty of Loyalty by Headley and Berns**

246.    Landus incorporates the foregoing paragraphs as if fully stated herein.

247.    Headley and Berns were employees, salespersons, and agents for Landus.

248.    As agents for Landus, Headley and Berns owed Landus a fiduciary duty of loyalty.

249.    Headley and Berns breached the fiduciary duty of loyalty by stealing its Confidential Information and using that information to improperly compete with Landus.

250.    As a result of this breach of fiduciary duty, Landus has and will continue to suffer damages in an amount to be determined at trial, and Landus will also suffer irreparable harm absent injunctive relief.

**COUNT EIGHT**
**Breach of Fiduciary Duty of Confidentiality by Headley and Berns**

251.    Landus incorporates the foregoing paragraphs as if fully stated herein.

252.    Headley and Berns were employees, salespersons, and agents for Landus.

253.    As agents for Landus, Headley and Berns owed Landus fiduciary duties, including, but not limited to, the duty of confidentiality.

254.    Headley and Berns also agreed to comply with Landus' Confidentiality Policy.

255.    Headley and Berns breached the duty of confidentiality.

256.    As a result of this breach of the duty of confidentiality, Landus has and will continue to suffer damages in an amount to be determined at trial, and Landus will also suffer irreparable harm absent injunctive relief.

36

## COUNT NINE
### Intentional Interference with Prospective Economic Advantage by Headley, Berns, and NEW Cooperative

257. Landus incorporates the foregoing paragraphs as if fully stated herein.

258. Landus has a prospective contractual or business relationship with numerous farmer customers.

259. Headley, Berns, and NEW Cooperative knew of these prospective relationships.

260. Prior to and following his resignation from Landus, Headley intentionally and improperly interfered with these relationships by stealing Landus' Confidential Information and improperly using that information to take Landus' current and prospective customers.

261. Berns intentionally and improperly interfered with these relationships by assisting Headley in stealing Landus' Confidential Information and using that information to take Landus' current and prospective customers.

262. NEW Cooperative is liable for the actions of Headley and Berns because they were its employees and agents at the time of their wrongdoing.

263. The interference by Headley, Berns, and NEW Cooperative was done with the intention to financially injure or destroy Landus.

264. The interference by Headley, Berns, and NEW Cooperative caused many prospective and current Landus farmer customers to not enter into or continue their relationships with Landus.

265. The interference by Headley, Berns, and NEW Cooperative with Landus' prospective business and economic advantage has caused and will continue to cause Landus to suffer damages in an amount to be determined at trial, and Landus will also suffer irreparable harm absent injunctive relief.

266.   Upon information and belief, the interference by Headley, Berns, and NEW Cooperative was in willful and wanton disregard of Landus' rights, entitling it to recovery of punitive damages.

## COUNT TEN
### Intentional Interference with Contract by Headley, Berns, and NEW Cooperative

267.   Landus incorporates the foregoing paragraphs as if fully stated herein.

268.   Landus has contracts with numerous farmer customers for agronomy goods and services for 2021.

269.   Headley, Berns, and NEW Cooperative knew of these contracts.

270.   Prior to and following his resignation from Landus, Headley intentionally and improperly interfered with these contracts by stealing Landus' Confidential Information and improperly using that information to take Landus' customers.

271.   Berns intentionally and improperly interfered with these contracts by assisting Headley in stealing Landus' Confidential Information and using that information to take Landus' current and prospective customers

272.   NEW Cooperative is liable for the actions of Headley and Berns because they were its employees and agents at the time of their wrongdoing.

273.   Through improper use of the stolen Confidential Information, Headley, Berns, and NEW Cooperative have caused many customers to request refunds of their prepay payments for 2021.

274.   The interference by Headley, Berns, and NEW Cooperative caused many Landus farmer customers to not enter into or continue their relationships with Landus.

38

275.    The interference by Headley, Berns, and NEW Cooperative with Landus' contracts has caused and will continue to cause Landus to suffer damages in an amount to be determined at trial, and Landus will also suffer irreparable harm absent injunctive relief.

276.    Upon information and belief, the interference by Headley, Berns, and NEW Cooperative was in willful and wanton disregard of Landus' rights, entitling it to recovery of punitive damages.

## COUNT ELEVEN
### Unjust Enrichment by Headley, Berns, and NEW Cooperative

277.    Landus incorporates the foregoing paragraphs as if fully stated herein.

278.    Headley, Berns, and NEW Cooperative have been enriched and received a benefit through the improper use of Landus' stolen Confidential Information.

279.    Headley, Berns, and NEW Cooperative have used the stolen Confidential Information to take customers from Landus.

280.    This was at the expense of Landus.

281.    It is unjust to allow Headley, Berns, and NEW Cooperative to retain this benefit under the circumstances.

282.    Because of the unjust enrichment of Headley, Berns, and NEW Cooperative, they have been enriched in an amount to be determined at trial, Landus has suffered and will continue to suffer damages in an amount to be determined at trial, and Landus will suffer irreparable harm absent injunctive relief.

## COUNT TWELVE
### Evidence Spoliation by Headley, Berns, and NEW Cooperative

283.    Landus incorporates the foregoing paragraphs as if fully stated herein.

284.    Headley and Berns destroyed key evidence in this case of their misconduct.

285.    At the time of that destruction, litigation was reasonable anticipated.

286.    NEW Cooperative is liable for that evidence spoliation, because the spoliation occurred while Headley and Berns were agents and employees of NEW Cooperative.

287.    Because of the evidence spoliation by Defendants, Landus is entitled to appropriate adverse inferences, recovery of its attorney fees, an order enjoining any further destruction of evidence, and an order requiring Defendants to make available to Landus all relevant devices for forensic examination.

## COUNT THIRTEEN
### Temporary Restraining Order, Preliminary Injunction, and Permanent Injunction Against Headley, Berns, and NEW Cooperative

288.    Landus incorporates the foregoing paragraphs as if fully stated herein.

289.    Landus is entitled to a temporary restraining order ("TRO"), preliminary injunction, and permanent injunction that: (a) enjoins Defendants from stealing, disclosing, and using its Confidential Information, (b) enjoins Defendants from any further spoliation of evidence and requires Defendants to preserve all relevant evidence, (c) enjoins Defendants from soliciting or selling to customers to which they were assigned at Landus until a full trial on the merits is held, (d) requires Defendants to make all relevant devices available for Landus' forensic examination; and (e) orders Apple and any other entity backing-up any of those devices, to preserve the iCloud and other back-up data.

290.    Landus is likely to, and will, succeed on its trade secrets and other claims.

40

291.   The TRO and preliminary injunction is necessary to prevent further irreparable harm to Landus.

292.   The public interest waives in favor of the TRO and preliminary injunction sought.

293.   The relative balance of harms to the parties also favors entry of the TRO and preliminary injunction.

294.   Landus is also entitled to an appropriate permanent injunction.

## JURY DEMAND

Landus hereby demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Landus Cooperative respectfully requests that the Court:

1.   Enter the following adverse inferences based on the Defendants' spoliation of evidence, including, but not limited to:

    (a)   Headley disclosed the stolen trade secrets to Berns;

    (b)   Defendants have used the trade secrets stolen from Landus;

    (c)   The trade secrets stolen from Landus are not limited to the information stolen through Headley's December 19, 2020 emails, because Defendants' destruction of evidence has made it impossible to determine the full extent of information taken;

    (d)   Defendants' use of the stolen trade secrets has caused customers to move their business from Landus to NEW Cooperative; and

    (e)   Landus has been damaged by Defendants' misappropriation of its trade secrets.

41

2.      Enter a TRO, preliminary injunction, and permanent injunction against Headley, Berns, and NEW Cooperative that:

     (a)      Enjoins them from using or disclosing any of Landus' Confidential Information;

     (b)      Orders them to return all of Landus' Confidential Information, including but not limited to, the Confidential Information stolen by Headley on December 19, 2020, the notebooks with customer information maintained by Berns and Headley while employed with Landus, and any other stolen Confidential Information.  This obligation encompasses all copies, extracts, abstracts, charts and summaries of such material, whether written or otherwise recorded, and any other records in which any of the Confidential Information has been referenced, incorporated, or used.

     (c)      Enjoins Berns and Headley from soliciting or selling to the customers to which they were assigned at Landus until a full trial on the merits is held, and thereafter permanently enjoins Berns and Headley as appropriate;

     (d)      Enjoins Defendants from any further spoliation of evidence;

     (e)      Orders Defendants to preserve all relevant evidence;

     (f)      Orders Defendants to make all relevant devices, iCloud backups, and storage devices available to Landus for forensic examination; and

     (g)      Orders Apple, and any other entity backing-up any of those devices, to preserve the iCloud and other back-up data.

3.      Enter judgment against Defendants Headley, Berns, and NEW Cooperative and in favor of Plaintiff Landus for:

a. All actual damages incurred by Landus;

b. Damages for any unjust enrichment caused by the misappropriation of the Confidential Information that is not taken into account in computing the actual loss;

c. Exemplary damages in an amount two (2) times the amount of the combined actual and unjust enrichment damages under the Defend Trade Secrets Act and Iowa Uniform Trade Secrets Act;

d. Attorney fees under the Defend Trade Secrets Act and Iowa Uniform Trade Secrets Act;

e. Attorney fees for evidence spoliation;

f. Punitive damages; and

g. All interest, reasonable attorneys' fees, and costs otherwise available under the law.

4. Order such other relief and damages as the Court may deem just and proper.

Dated: January 19, 2021.

**FAEGRE DRINKER BIDDLE & REATH LLP**

_/s/ Angela Gray_

Jesse Linebaugh
_Jesse.Linebaugh@FaegreDrinker.com_
Angela Gray
_Angela.Gray@FaegreDrinker.com_
Gavin Quill
_Gavin.Quill@FaegreDrinker.com_
801 Grand Avenue, 33rd Floor
Des Moines, Iowa 50309
Telephone: (515) 248-9000
Facsimile: (515) 248-9010

**ATTORNEYS FOR PLAINTIFF LANDUS COOPERATIVE**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the foregoing Plaintiff Landus Cooperative's **Complaint for Damages, Temporary Restraining Order, and Temporary and Permanent Injunctive Relief, and Jury Demand** was served upon the following by email on the 19th day of January 2021.

*/s/ Katharine Fenn*

Stu Cochrane
Johnson Law Firm
809 Central Ave., Suite 600
Fort Dodge, Iowa 50501
Stu.Cochrane@johnsonlawia.com

*Attorney for Defendants NEW Cooperative, Inc.,*
*Jeffrey Headley, and Brian Berns*